UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| CHERYL LETT, | § | |
| TDCJ # 1595226, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 3:16-CV-0027 |
| | § | |
| LORIE DAVIS, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

State inmate Cheryl Lett has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition") (Dkt. 1), seeking relief from a manslaughter conviction that resulted in a sentence of life imprisonment in the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ"). She has also filed a supplement to that Petition ("Supplemental Petition") (Dkt. 8). Respondent has filed a Motion for Summary Judgment (Dkt. 26), asserting several procedural defenses and arguing that Lett is not entitled to relief. Lett has filed objections in response (Dkt. 33). In addition, she has filed a motion for transcripts at government expense (Dkt. 35). After reviewing all of the parties' submissions, the state court record, and the applicable law, the Court concludes that Respondent's motion should be granted and that this action should be dismissed for the reasons explained below.

# I.    BACKGROUND AND PROCEDURAL HISTORY

## A.    Lett's Trial and Punishment Proceedings

In 2008, a Galveston County grand jury returned an indictment against Lett in Cause No. 08CR2004, charging her with murder for intentionally or knowingly causing the death of Craig Curry by stabbing him with a knife (Dkt. 27-2, at 6-7).[1] The state summarized the overwhelming evidence presented against Lett at trial, with corresponding cites to the court reporter's record ("R.R."), showing that Curry bled to death after Lett stabbed him in the chest, as follows:

> [Lett] and the victim were dating, lived together, and had a child. R.R. IV: 28, 30; V: 7. The night [Lett] stabbed the victim, the victim was with Quincy Harris. R.R. V: 13, 37. Qui[]ncy and the victim stopped at the victim's house in the early morning. R.R. V:13–14. [Lett] was angry with the victim. R.R. V: 16, 18. The victim and Quincy left the house. R.R. V: 18. The two went with the victim's neighbor, Kevin Britton, and talked for some time with him. R.R. V: 38; IV: 47. [Lett] called the victim's cell phone at least twice. R.R. V: 19.
>
> Eventually, the victim and Quincy returned to the victim's house. R.R. V: 19. [Lett] was still angry at the victim. R.R. V: 20–21. The victim asked [Lett] for something that was in [Lett]'s purse. R.R. V: 21–22. [Lett] refused to give the victim her purse. R.R. V: 22. [Lett] grabbed the purse and put it on her lap. R.R. V: 22. The victim did not threaten [Lett] but attempted to get the purse from [Lett]. R.R. V: 23. [Lett] grabbed the purse back and ran into the kitchen. R.R. V: 24. The victim reached into his pocket and gave Quincy his car keys. R.R. V: 24. [Lett] came back into the room with a knife. R.R. V: 24. Quincy testified the knife looked similar to the one [Lett] used in the past to slash the victim's tires. R.R. V: 25. [Lett] held the knife towards the victim, above her shoulder, with the blade pointed out. R.R. V: 26. [Lett] followed the victim around the couch three or four times. R.R. V: 27.

---

[1] Unless otherwise indicated, all page numbers for cites to the record reference the pagination inserted on each docket entry by the Court's electronic docketing system, CM/ECF.

[Lett] told Quincy that if he took the victim's truck, she would do something to him too. R.R. V: 40. Quincy left the house and went to the victim's truck. R.R. V: 29, 32. [Lett] followed the victim out of the house. R.R. V: 32. [Lett] had a gun and pointed it at Quincy as he sat in the victim's truck. R.R. V: 34–35. Quincy, afraid for his life, drove off. R.R. V: 35. As he was driving off, Quincy saw [Lett] stab the victim with the knife. R.R. V: 37.

Britton heard the gunshots. R.R. IV: 51. Because the shots sounded like they came from the direction of the victim's house, Britton crossed the field between his house and the victim's. R.R. IV: 52. Before Britton could get to the victim's house, he saw the victim's truck pull up. R.R. IV: 53. Britton saw Quincy get out of the truck. R.R. IV: 56.

Quincy drove around the block before returning to the victim's house. R.R. V: 41. When he returned to the house he saw the door was still open. R.R. V: 41. Quincy went inside. R.R. V: 41. The victim was on the floor. R.R. V: 41. [Lett] stood over him and was on the telephone. R.R. V: 41. Quincy heard [Lett] speaking to the 911 dispatcher. R.R. V: 42. [Lett] was not crying and was not emotional. R.R. V: 42. Quincy did not see [Lett] attempt to give the victim CPR. R.R. V: 42–43.

Britton testified the police arrived between 15 and 20 minutes after he heard the gunshots. R.R. IV: 57. When the officers arrived, they encountered Quincy coming out of the victim's house. R.R. IV: 86, 147, 172. Quincy told the officers that [Lett] stabbed the victim. R.R. IV: 86, 147.

Officer Kelemen testified when he entered the house, the victim was on the floor, in a pool of blood. R.R. IV: 89–90. The officer described the blood as thick and jelly-like. R.R. IV: 90. The medical examiner testified that gel-like thick blood means the blood had started to clot. R.R. V: 136–37. The doctor [estimated] that it would take a mass of blood 20 to 30 minutes to clot. R.R. V: 137.

Officer Kelemen testified [Lett] had blood on her hands. R.R. IV: 90. Officer Kelemen testified [Lett]'s demeanor was calm and she was not hysterical when she told him that she was at the back of the house when she heard the victim come into the house. R.R. IV: 93–94. [Lett] told the officer that the victim asked for an ambulance. R.R. IV: 94. [Lett] said the victim was holding his chest and bleeding. R.R. IV: 94.

[Lett] refused to leave the house and refused to give the officers consent to search the house. R.R. V: 93. The police obtained a search warrant. R.R. V: 79–80. Upon being told the officers had a search warrant, [Lett] became argumentative and irate and told the officers they could only search the front room. R.R. V: 80, 95. During their search of the house, the officers encountered a room with a dog locked in it. R.R. V:82. After animal control removed the pit bull, the officers went into the room and saw the handle of a knife under the bed and a spent shell casing on the floor. R.R. V: 82–83. After lifting the bed's mattress, the officers found a bloody knife, a gun, and a live bullet. R.R. V: 83, 85. The Department of Public Safety forensic scientist testified the victim's DNA was on the blade of the knife. R.R. VI: 22–23. A mixture of [Lett]'s and the victim's DNA was on the knife's handle. R.R. VI: 24. [Lett]'s, not the victim's, DNA was on the gun. R.R. VI: 27–28.

[Lett] never told the officers that she feared for her life, that she was attacked, or that she was injured. R.R. IV: 97, 150, 161. Quincy testified [Lett] did not seem scared. R.R. V: 24. Sergeant Macik took [Lett]'s statement. R.R. V: 94. [Lett] told the sergeant that you cannot predict what happens in a fight. R.R. V: 98. [Lett] said she got into a fight with the victim and it got out of hand. R.R. V: 99. At one point, [Lett] said men do not know their strength, so she always grabs a weapon. R.R. V: 99. [Lett] told Macik she grabbed a weapon because she does not let a man beat her. R.R. V: 99.

Officer Kelemen testified there did not appear to have been an altercation. R.R. IV: 97. Sergeant McDonald, the crime scene investigator, took photographs of [Lett]. R.R. IV:109–10, 129–30. [Lett] did not have any injuries to her hands, arms, legs, feet, back, or face. R.R. IV: 129–30.

[Lett] called her family members and a psychiatrist to testify about her relationship with the victim. R.R. VI: 29, 48, 81, 90. [Lett] and her witnesses testified the victim was aggressive and violent towards her. R.R. VI: 53, 205, 207. The psychiatrist testified that [Lett]'s behavior was that of a domestic violence victim. R.R. VI:105. In her testimony, [Lett] denied threatening or shooting at Quincy. R.R. VII: 39, 122–24, 127. [Lett] denied intentionally stabbing the victim and claimed he must have ran into the knife's blade. R.R. VII: 87–88.

(Dkt. 26, at 4-7) (alterations in original) (quoting from Appellate Brief for the State of Texas, Dkt. 28-1, at 7-11). After hearing all of the evidence, a jury in the 212nd Judicial

District Court of Galveston County acquitted Lett of the murder charge, but found her guilty of the lesser-included offense of manslaughter (Dkt. 27-3, at 57-58).

During a separate punishment proceeding, Lett stipulated that she had a prior felony conviction for possession of a controlled substance (Dkt. 27-16, at 6-7; Dkt. 27-19, at 9-11). The state presented evidence that Lett had other prior convictions for failing to report to a police officer and theft by check (Dkt. 27-19, at 15-16). Lett also stipulated that there were at least four other felony drug possession charges pending against her (Dkt. 27-16, at 3-6; Dkt. 27-19, at 18-21). Pursuant to § 12.45 of the Texas Penal Code, the state agreed to dismiss those pending cases in exchange for Lett's stipulation (Dkt. 27-16, at 5-6). After hearing additional testimony, the trial court imposed a life sentence in a judgment entered on August 28, 2009 (Dkt. 27-3, at 60; Dkt. 27-16, at 49, 50).

## B. Lett's Direct Appeal and First State Habeas Proceeding

On direct appeal Lett argued that the trial court erred by refusing to remove her retained defense counsel and by not affording her an opportunity to obtain a replacement attorney (Dkt. 27-20, at 5). The intermediate state court of appeals rejected those arguments and affirmed the conviction in an unpublished opinion. *See Lett v. State*, No. 14-09-00832 (Tex. App.–Houston [14th Dist.] March 24, 2011) (Dkt. 28-3, at 1-7).

Lett challenged her conviction further by filing an application for a state writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure (Dkt. 28-14, at 5-22). Lett asserted the following general grounds for relief:

1. The trial court made several erroneous rulings in violation of her right to due process.

2. She was denied effective assistance of counsel in connection with her appeal, which deprived her of the ability to file a *pro se* petition for discretionary review with the Texas Court of Criminal Appeals.

3. She was denied effective assistance of counsel at trial.

4. The evidence, which showed that she acted in self-defense, was insufficient to support her conviction.

5. Her punishment was excessive or cruel and unusual due to prosecutorial vindictiveness.

(Dkt. 28-14, at 10-18). After considering affidavits from Lett's trial and appellate attorneys (Dkt. 28-16, at 22-26), the state conceded that Lett did not receive timely notice of the adverse decision on direct appeal or her right to file a *pro se* petition for discretionary review with the Texas Court of Appeals (Dkt. 28-16, at 28). The state habeas corpus court, which featured a different judge from the one who presided over Lett's trial, issued findings and concluded that Lett should be afforded relief in the form of an opportunity to file an out-of-time *pro se* petition for discretionary review (Dkt. 28-16, at 37-38). The trial court found further that Lett otherwise failed to show that her trial attorney was ineffective or that the result of the proceeding would have been different, but for counsel's errors, and summarily rejected Lett's remaining claims as without merit (*Id.*).

The Texas Court of Criminal Appeals granted relief as recommended, allowing Lett to file an out-of-time petition for discretionary review, and "dismissed" Lett's remaining claims. *See Ex parte Lett*, Writ No. 81,295-01, 2014 WL 2527784, at *1 (Tex. Crim. App. June 4, 2014) (per curiam) (Dkt. 28-17, at 1-2). Lett filed her out-of-time petition for discretionary review on July 11, 2014 (Dkt. 28-9), which the Texas Court of

Criminal Appeals refused on August 20, 2014. *See Lett v. State*, PDR No. 0901-14. Because Lett did not file appeal further by filing a petition for a writ of certiorari with the Supreme Court, her manslaughter conviction became final 90 days later on November 18, 2014. *See* SUP. CT. R. 13.1.

### C. Lett's Second State Habeas Proceeding

On March 26, 2015, Lett filed a second state habeas corpus application under Article 11.07 (Dkt. 28-19, at 18), asserting the following general claims for relief:

1. She was denied effective assistance of counsel at trial.

2. She was denied the opportunity to confront and cross-examine evidence regarding the autopsy report.

3. The prosecutor knowingly sponsored false testimony and failed to disclose favorable evidence.

4. The trial court gave improper jury instructions.

5. The trial court violated her right to due process.

(*Id*. at 8-16). The state filed an answer in response to that application and re-submitted the original affidavit filed by Lett's trial attorney regarding the ineffective-assistance claims raised against him (Dkt. 28-19, at 41-47). The state habeas corpus court issued findings and concluded that Lett failed to show that her trial attorney was ineffective or that any of her other claims had merit (Dkt. 28-19, at 47-48). The Texas Court of Criminal Appeals agreed and denied relief without a written order on July 29, 2015 (Dkt. 28-18, at 1).

**D. Lett's Federal Habeas Petition and Supplement**

On January 29, 2016, this Court received an undated, unsigned Petition for a federal writ of habeas corpus from Lett, asserting several claims for relief under 28 U.S.C. § 2254(d) (Dkt. 2). Several months later Lett filed additional claims for relief in a Supplemental Petition that is dated August 25, 2016 (Dkt. 8, at 17). Respondent has painstakingly scoured the pleadings and characterized Lett's proposed claims for relief in the following manner:

1. She was denied the right to effective assistance of counsel at trial when her defense attorney:

    a. failed to bring "these errors" to the trial court's attention and properly preserve them for appeal;

    b. failed to object to limits placed by the trial court on testimony from defense expert (Dr. Michael Fuller);

    c. failed to request a bill of exception when the trial court denied impeachment evidence;

    d. failed to object to the withholding of *Brady* evidence;

    e. failed to investigate impeachment law;

    f. was not properly licensed before or during the time of trial; and

    g. provided incorrect legal advice regarding Texas Penal Code § 12.45.

2. She was denied the right to effective assistance of counsel on appeal when her appellate attorney failed to:

    a. preserve for appellate review all appropriate constitutional defects and present evidence in a motion for new trial;

    b. timely inform Lett of the court's order regarding briefing;

    c. perfect the appellate record; and

d.  raise a *Brady* violation and claims of ineffective assistance of trial counsel, insufficiency of the evidence, and prosecutorial misconduct.

3.  The state withheld exculpatory evidence consisting of:

a.  prior dishonest tactics and misleading fact-findings by the medical examiner, Dr. Stephen Pustilnik;

b.  DNA evidence analyzed by the Texas Department of Public Safety ("DPS") crime lab in Houston;

c.  autopsy reports;

d.  a toxicology report; and

e.  proof that star witness Quincy Harris received a favorable plea deal or reduced sentence in exchange for tainted testimony.

4.  The prosecution improperly elicited perjured testimony from Dr. Pustilnik, who inferred intent from the force of the weapon and the amount of blood present.

5.  The circumstantial evidence presented by the state was insufficient to support Lett's conviction.

6.  The trial court abused its discretion by denying Lett's request for various defenses.

7.  Lett was denied due process when the Texas Court of Criminal Appeals denied relief without holding an evidentiary hearing.

(Dkt. 2, at 1-19, Dkt. 8, at 1-17, Dkt. 26, at 1-2).  Lett does not raise any specific objection to the characterization of her claims or attempt to clarify the grounds for relief she raises.[2]  Construing Lett's pleadings under the lenient standard that applies to *pro se*

---

[2] Although Lett argues that Respondent's characterization is "misapplied and incorrect," she offers no explanation or support for this assertion (Dkt. 33, at 2).

pleadings,[3] the Court adopts the characterization and order of claims outlined by Respondent for purposes of analysis.

### E.    Respondent's Motion for Summary Judgment

Respondent moves for summary judgment, arguing that certain claims asserted in Lett's Supplemental Petition (Claims 1a, 3a, 3b, 4, and 6) are untimely and should be dismissed as barred by the one-year statute of limitations on federal review (Dkt. 26, at 8-15).  Respondent argues further that several claims (Claims 1a, 1b, 1c, 1e, 1h, 2a-d, 3a, 3b, 3e (in part), 4, and 7) are unexhausted or were rejected for procedural reasons in state court (Claim 5) and are therefore barred by the doctrine of procedural default (Dkt. 26, at 15-19).  Turning to the claims that were adjudicated on the merits in state court (Claims 1d, 1f, 1g, 3c, 3d, and 3e (in part)), Respondent argues that Lett fails to show that the state court's decision to deny relief was unreasonable or that she is entitled to relief under the federal habeas standard of review found in 28 U.S.C. § 2254(d) (Dkt. 26, at 20-30).  Respondent adds that Lett's claim regarding the state court's failure to hold an evidentiary hearing on state habeas review (Claim 7) is not actionable in a federal habeas proceeding (Dkt. 26, at 19).

Lett has filed a response to the summary judgment motion (Dkt. 33).  Lett has also filed a motion for copies of her state court records at government expense (Dkt. 35),

---

[3] The petitioner proceeds *pro se* in this case.  Courts are required to liberally construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys.  *See Haines v. Kerner*, 404 U.S. 519, 521 (1972); *see also Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011) ("The filings of a federal habeas petitioner who is proceeding *pro se* are entitled to the benefit of liberal construction," meaning that their submissions "are not held to the same stringent and rigorous standards as are pleadings filed by lawyers.") (internal citation marks and quotation omitted).

which will be denied.[4]   The Court addresses the parties' arguments in turn below, beginning with the statute of limitations.

## II.   THE ONE-YEAR STATUTE OF LIMITATIONS

Respondent argues that claims asserted for the first time in Lett's Supplemental Petition (Claims 1a, 3a, 3b, 4, and 6) are barred by the one-year statute of limitations on federal review (Dkt. 26, at 8-15).  The Antiterrorism and Effective Death Penalty Act (the "AEDPA"), codified as amended at 28 U.S.C. § 2244(d), imposes a one-year limitations period on federal habeas corpus review, as follows:

> (1)   A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> > (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

---

[4] Lett concedes that she obtained transcripts in connection with her appeal (Dkt. 33, at 8) and several of her pleadings include exhibits from the state court record (Dkt. 8-1, 33-1 through 33-15).  She does not allege facts showing that she has a particular need for additional copies of these documents.  Under these circumstances, courts have recognized that a petitioner has no right to a free copy of her transcript or other court records for use in a collateral proceeding.  *See United States v. MacCollom*, 426 U.S. 317 (1976); *Bonner v. Henderson*, 517 F.2d 135, 136 (5th Cir. 1975); *United States v. Herrera*, 474 F.2d 1049, 1049-50 (5th Cir. 1973); *Smith v. Beto*, 472 F.2d 164, 165 (5th Cir. 1973); *Colbert v. Beto*, 439 F.2d 1130, 1131 (5th Cir. 1971).  Accordingly, her motion for copies of the state court record at government expense (Dkt. 35) will be denied.

> (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d).  Because this proceeding was filed well after the AEDPA went into effect on April 24, 1996, the one-year limitations period clearly applies.  *See Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).

To the extent that Lett challenges a state court judgment of conviction, the AEDPA statute of limitations began to run when her conviction became final pursuant to § 2244(d)(1)(A), when her time to pursue direct review expired.  After the Texas Court of Criminal Appeals refused Lett's petition for discretionary review on August 20, 2014, *see Lett v. State*, PDR No. 0901-14, her time to file a petition for a writ of certiorari with the Supreme Court expired 90 days later on November 18, 2014.  *See* SUP CT. R. 13.1; *Jimenez v. Quarterman*, 555 U.S. 113 (2009); *Womack v. Thaler*, 591 F.3d 757, 757-58 (5th Cir. 2009).  Lett's conviction became final on that date, triggering the statute of limitations, which expired one year later on November 18, 2015.

Lett is entitled to some statutory tolling of the limitations period.  Under 28 U.S.C. § 2244(d)(2), the time during which a "properly filed application for [s]tate post-conviction or other collateral review" is pending shall not count toward the limitations period on federal habeas review.  Lett's second state habeas corpus application, which was filed on March 25, 2015, and denied by the Texas Court of Criminal Appeals on July

29, 2015, tolled the limitations period for 126 days, extending her deadline to seek federal review until March 23, 2016.

Under this extended deadline, the claims asserted in Lett's original federal habeas Petition, received for filing on January 29, 2016, are timely. As Respondent notes, however, the claims asserted in Lett's Supplemental Petition, which was executed on August 25, 2016 (Dkt. 8, at 17), are late by several months.[5]

Lett has filed a response to Respondent's Motion for Summary Judgment, but she does not allege facts showing that she is entitled to any additional statutory tolling. In that regard, Lett does not allege that state action impeded her from filing her Supplemental Petition in a timely manner, nor does she assert that any of her Supplemental claims depend on a newly recognized constitutional right. *See* 28 U.S.C. § 2244(d)(1)(B) & (C). Likewise, Lett has not shown that any of the claims in her Supplemental Petition relies upon a "factual predicate" that could not have been discovered previously for purposes of § 2244(d)(1)(D). *See Manning v. Epps*, 688 F.3d 177, 189-90 (5th Cir. 2012). Accordingly, there is no statutory basis to save the late-filed claims raised in Lett's Supplemental Petition.

---

[5] To the extent that the Supplemental Petition raises new claims for relief based on facts that differ from the ones presented in the Petition, those claims do not relate back to the date of the original pleading under Rule 15(c) of the Federal Rules of Civil Procedure or the criteria articulated by the Supreme Court in *Mayle v. Felix*, 545 U.S. 644, 650 (2005) (holding that an amended habeas petition does not relate back, thereby escaping the AEDPA's one-year statute of limitations, when it asserts new grounds for relief "supported by facts that differ in both time and type from those the original pleading set forth"). *See, e.g., United States v. Gonzalez*, 592 F.3d 675, 679-80 (5th Cir. 2009) (distinguishing ineffective-assistance claims that differed in "time and type" under the criteria found in *Felix*).

Likewise, Lett does not assert any grounds for equitable tolling, which is available only in rare and exceptional circumstances. *Mathis v. Thaler*, 616 F.3d 461, 475 (5th Cir. 2010). A habeas petitioner is entitled to equitable tolling of the limitations period "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing.'" *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). "The petitioner bears the burden of proof concerning equitable tolling." *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002). Lett provides no explanation for her delay in filing the Supplemental Petition. The record does not otherwise disclose facts showing that Lett pursued federal review of the claims asserted in her Supplemental Petition with the requisite due diligence or that she was prevented from doing so by any extraordinary circumstance. Therefore, Lett does not meet her burden to show that equitable tolling is warranted.

Absent a statutory or equitable exception, the Court concludes that the claims asserted in Lett's Supplemental Petition (Claims 1a, 3a, 3b, 4, and 6) are barred by the one-year statute of limitations on federal review.[6] Accordingly, Respondent is entitled to summary judgment on these claims.

## III.   THE DOCTRINE OF PROCEDURAL DEFAULT

Respondent argues that many of Lett's claims are unexhausted (Claims 1a, 1b, 1c, 1e, 1h, 2a-d, 3a, 3b, 3e (in part), 4, and 7) or were raised and rejected in state court for

---

[6] As discussed further below, several of these claims – Claims 1a, 3a, 3b, and 4 – are also unexhausted because Lett did not raise them in state court before presenting them on federal review. For this additional reason, these claims are procedurally barred from federal review.

firmly established procedural reasons (Claim 5). Because proper exhaustion and compliance with state procedural rules are prerequisites to federal review, Respondent maintains that these claims are barred by the doctrine of procedural default (Dkt. 26, at 15-19).

As a general rule, the doctrine of procedural default holds that "a state prisoner's default of federal claims 'in state court pursuant to an independent and adequate state procedural rule' bars federal habeas review of those claims." *McQuiggin v. Perkins*, 569 U.S. 383, 402 (2013) (quoting *Coleman v Thompson*, 501 U.S. 722, 750 (1991)). "The purpose of this doctrine is to ensure that state prisoners not only become ineligible for state relief before raising their claims in federal court, but also that they give state courts a sufficient opportunity to decide those claims before doing so." *O'Sullivan v. Boerckel*, 526 U.S. 838, 853 (1999). Thus, a federal habeas corpus court asks whether a state inmate has exhausted her state court remedies before seeking federal habeas review and also asks "how [she] has done so." *Id*. In that regard, a state prisoner must not only have exhausted her state court remedies before coming to federal court, she "must also have *properly* done so by giving the state a fair opportunity to pass upon [her claims]." *Id*. (emphasis in original) (internal quotation marks and citation omitted).

To overcome a procedural default, a federal habeas corpus petitioner must demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law"; or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Cause requires a showing that there was "some objective factor external to the defense" that impeded a

prisoner or her defense counsel's ability to comply with the state's procedural rule. *See id*. at 753. Actual prejudice, in this context, requires a petitioner to show "not merely that the errors . . . created a possibility of prejudice, but that they worked to [her] actual and substantial disadvantage, infecting [her] entire trial with error of constitutional dimensions." *Hughes v. Quarterman*, 530 F.3d 336, 341 (5th Cir. 2008) (citations and internal quotation marks omitted). To establish a fundamental miscarriage of justice, a petitioner must provide the court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986).

### A.    The Failure to Exhaust State Court Remedies

The federal habeas corpus statutes mandate that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). This means that a petitioner "must exhaust all available state remedies before he may obtain federal habeas corpus relief." *Sones v. Hargett*, 61 F.3d 410, 414 (5th Cir. 1995). In Texas, a criminal defendant may exhaust remedies by taking the following paths: (1) the petitioner may file a direct appeal from a judgment of conviction followed, if necessary, by a petition for discretionary review in the Texas Court of Criminal Appeals; and/or (2) she may file a petition for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure in the convicting court, which is transmitted to the Texas Court of Criminal Appeals once the trial court determines whether findings are necessary. *See* TEX. CODE CRIM. PROC. art. 11.07 § 3(c); *see also Busby v. Dretke*, 359 F.3d 708, 723 (5th Cir.

2004) ("Habeas petitioners must exhaust state remedies by pursuing their claims through one complete cycle of either state direct appeal or post-conviction collateral proceedings.").

Although Lett raised several ineffective-assistance allegations on state habeas review, the record reflects that she did not present the specific allegations raised in Claims 1a, 1b, 1c, 1e, 1h, or 2a-d for proper consideration (Dkt. 28-19, at 8-18).[7] The Fifth Circuit has recognized that a petitioner must exhaust each distinct allegation of ineffective assistance before raising a claim for ineffective assistance of counsel in federal court. *See Jones v. Jones*, 163 F.3d 285, 296-98 (5th Cir. 1998). As a result, Lett did not exhaust the ineffective-assistance allegations in Claims 1a, 1b, 1c, 1e, 1h, or 2a-d.

Likewise, Lett did not raise in state court the *Brady* allegations regarding previous testimony by Dr. Pustilnik and the DPS crime lab reports (Claims 3a and 3b), her specific *Brady* claim concerning the existence of an agreement involving witness Quincy Harris (Claim 3e),[8] the claim about perjured testimony (Claim 4), or her claim concerning the

---

[7] With the exception of Lett's claim that she was denied the right to file a pro se petition for discretionary review, the Texas Court of Criminal Appeals "dismissed" all of the remaining claims raised in her first state habeas application. *See Ex parte Lett*, Writ NO. 81,295-01, 2014 WL 2527784, at *1 (Tex. Crim. App. June 4, 2014) (per curiam). In doing so, the Texas Court of Criminal Appeals cited *Ex parte Torres*, 943 S.W.2d 469 (Tex. Crim. App. 1997). *Torres* holds that a "denial" of relief signifies that the court addressed and rejected the merits of a particular claim, while a "dismissal" signifies that the claims were rejected for reasons not related to the merits. *See Torres*, 943 S.W.2d at 472. Only those claims raised in Lett's second state habeas application were "denied" by the Texas Court of Criminal Appeals (Dkt. 28, at 1).

[8] Respondent divides Claim 3e into two portions, noting that Lett raised only a general *Brady* claim on state habeas review regarding the state's failure to disclose agreements with its witnesses, but failed to identify Quincy Harris as the complained of witness (Dkt. 26, at 16). Respondent argues that a portion of Lett's specific *Brady* claim regarding Quincy Harris is

failure to hold an evidentiary hearing (Claim 7) before seeking federal habeas review. Because Lett could have raised these allegations during her second state habeas corpus proceeding, she cannot now return to state court due to the Texas procedural rule that prohibits successive writs. *See* TEX. CODE CRIM. PRO. art. 11.07, § 4. Under these circumstances, Lett's failure to exhaust Claims 1a, 1b, 1c, 1e, 1h, 2a-d, 3a, 3b, 3e, 4, and 7 constitutes a procedural default. *See Neville v. Dretke*, 423 F.3d 474, 480 (5th Cir. 2005) (concluding that unexhausted claims, which could no longer be raised in state court due to Texas' prohibition on successive writs, were procedurally defaulted); *see also Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2000) (same) (citing *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995)).

Although Lett has filed a response to Respondent's Motion for Summary Judgment, she has not demonstrated cause or actual prejudice as the result of her default. Because the record does not disclose that any other exception applies, this is sufficient to bar her defaulted claims. *See Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir. 1992) ("A court need not consider whether there is actual prejudice if the petitioner fails to show cause.") (citations omitted); *see also Coleman v. Quarterman*, 456 F.3d 537, 546 (5th Cir. 2006) (observing that conclusory allegations are insufficient to show the requisite cause and prejudice for purposes of overcoming a procedural default). Accordingly, the Court concludes that her unexhausted claims (Claims 1a, 1b, 1c, 1e, 1h, 2 (in its entirety),

---

unexhausted (*Id*.). The Court does not disagree, but in an abundance of caution has addressed Lett's *Brady* claim regarding witness agreements on the merits further below.

3a, 3b, 3e (in part), 4, and 7) are procedurally barred.[9]  Therefore, the respondent is entitled to summary judgment on these claims.

### B.  Independent and Adequate Procedural Grounds

In addition, federal habeas review is barred if the last state court to consider the claim clearly based its denial of relief on an independent and adequate state-law procedural ground.  *See Coleman*, 501 U.S. 729-30.  For example, it is well settled under Texas law that "the writ of habeas corpus should not be used to litigate matters which should have been raised on direct appeal."  *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996) (op. reh'g) (quoting *Ex parte Goodman*, 816 S.W.2d 383, 385 (Tex. Crim. App. 1991)); *see also Ex parte Townsend*, 137 S.W.3d 79, 81 (Tex. Crim. App. 2004) ("Even a constitutional claim is forfeited if the applicant had the opportunity to raise the issue on direct appeal.").  The Fifth Circuit has recognized that this procedural rule constitutes an independent and adequate basis on which to bar federal review.  *See Dorsey v. Quarterman*, 494 F.3d 527, 532 (5th Cir. 2007); *Busby v. Dretke*, 359 F.3d 708, 719 (5th Cir. 2004) (citations omitted).

---

[9] Of these defaulted claims, Lett provides support only for her allegation that the state suppressed or failed to disclose evidence of misconduct on the part of medical examiner Dr. Pustilnik (Claim 3a).  In support of that claim Lett provides a letter dated March 7, 2014, from a district attorney in Potter County, which discloses *Brady* material in the form of news accounts about questionable opinions given by Dr. Pustilnik in in several other cases (Dkt. 8-1, at 1-7).  Review of the state court record confirms that this information was never provided to the state habeas corpus court for its consideration and, thus, the claim is unexhausted.  Assuming that this information qualifies as *Brady* material, there is no evidence that any of it was in the state's possession before the start of Lett's trial in August 2009, or that the criticism directed towards Dr. Pustilnik's testimony in those other cases could not have been discovered by the defense if due diligence had been used.  More importantly, the evidence is not material for purposes of establishing a *Brady* violation in this instance because there was no dispute at trial about the victim's cause of death.  Therefore, even if the claim were exhausted, Lett fails to establish that a *Brady* violation occurred as alleged in Claim 3a.

The record reflects that Lett raised her challenge to the sufficiency of the evidence (Claim 5) for the first time on state habeas corpus review, where it was summarily denied without a written order by the Texas Court of Criminal Appeals. In Texas, the law is firmly established that a sufficiency challenge may only be raised on direct appeal and may not be raised in a state habeas proceeding. *See West v. Johnson*, 92 F.3d 1385, 1389 n.18 (5th Cir. 1996); *Clark v. Texas*, 788 F.2d 309, 310 (5th Cir. 1986) (per curiam). When the Texas Court of Criminal Appeals is silent on its reasoning for denying an insufficiency of the evidence claim raised for the first time on state habeas review, a federal habeas corpus court may assume that the claim was denied because it is not cognizable on state collateral review. *Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004). The Fifth Circuit has recognized that the failure to properly raise a sufficiency challenge on direct appeal constitutes an "independent and adequate state procedural ground" that constitutes a procedural default. *Register v. Thaler*, 681 F.3d 623, 628 (5th Cir. 2012); *Reed v. Thaler*, 428 F. App'x 453, 454, 2011 WL 2437836, *1 (5th Cir. 2011) (per curiam); *see also Busby*, 359 F.3d at 718-19 (finding it firmly established by the Texas courts that a challenge to the sufficiency of the evidence must be raised on direct appeal and is not actionable on state habeas review).

As cause for this default, the Court notes that Lett has raised a claim that her appellate counsel was ineffective for failing to raise a sufficiency challenge properly on direct appeal. Ineffective assistance of counsel may, in some circumstances, constitute cause to excuse a procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)). However, the Supreme

Court has emphasized that a claim of ineffective assistance must "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Edwards*, 529 U.S. at 452 (quoting *Carrier*, 477 U.S. at 489). Thus, where a habeas petitioner did not exhaust her ineffective appellate counsel argument in state court, such a claim cannot furnish the requisite cause or prejudice for purposes of overcoming the procedural default of his underlying claims. *See Hatten v. Quarterman*, 570 F.3d 595, 605 (5th Cir. 2009). Because Lett did not exhaust her claim that she denied effective assistance of counsel on appeal, this allegation does not excuse her procedural default. Therefore, Respondent is entitled to summary judgment on the sufficiency challenge presented in Claim 5.[10]

## IV.    LETT'S REMAINING CLAIMS DO NOT WARRANT RELIEF

Of the remaining claims that were arguably adjudicated on the merits in state court (Claims 1d, 1f, 1g, 3c, 3d, and 3e (in part)), Respondent contends that Lett fails to show that the state court's decision to deny relief was unreasonable or that she is entitled to relief under the federal standard of review found in 28 U.S.C. § 2254(d) (Dkt. 26, at 20-

---

[10] Even if not barred, the evidence presented at Lett's murder trial, which is summarized above, is more than sufficient to support the jury's guilty verdict on the lesser-included offense of manslaughter, which simply requires proof that an individual "recklessly cause[d] the death of an individual." TEX. PENAL CODE § 19.04(a). Although Lett disagrees with the verdict, arguing that she is "innocent" because she acted in self-defense, the jury rejected that argument at trial. On habeas corpus review of a state court conviction, a challenge to the sufficiency of the evidence is governed by *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which considers only "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." To the extent that Lett asks this court to re-weigh the evidence and decide if the jury's decision was correct, this type of inquiry exceeds the scope of review permitted under the *Jackson* standard. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995) ("[U]nder *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review."). For this alternative reason, Lett's challenge to the sufficiency of the evidence fails to state a meritorious claim for relief.

30).   Respondent notes further that Claim 7 is not cognizable on federal habeas corpus review (Dkt. 26, at 19).

## A.   Standard of Review

To the extent that the petitioner's claims were adjudicated on the merits on direct appeal or during her second state habeas corpus proceeding, her remaining claims are subject to the AEDPA standard codified at 28 U.S.C. § 2254(d).   Under this standard, a federal habeas corpus court may not grant relief unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]"   28 U.S.C. § 2254(d)(1).   Where a claim presents a question of fact, a petitioner cannot obtain federal habeas relief unless she shows that the state court's denial of relief "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Matamoros v. Stephens*, 783 F.3d 212, 215 (5th Cir. 2015) (citations omitted).   To constitute an "unreasonable application of" clearly established federal law, a state court's holding "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, — U.S. —, 135 S. Ct. 1372, 1376 (2015) (citation omitted).   "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so

lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

The AEDPA standard "imposes a 'highly deferential standard for evaluating state-court rulings, . . . [which] 'demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted). This standard is intentionally "difficult to meet" because it was meant to bar relitigation of claims already rejected in state proceedings and to preserve federal habeas review as "a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring)). The deferential AEDPA standard of review applies even where the state court fails to cite applicable Supreme Court precedent or fails to explain its decision. *See Early v. Packer*, 537 U.S. 3, 7 (2002). Thus, a federal habeas corpus court's inquiry is not altered where the state court denies relief without a written opinion. *See Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003).

### B.     Ineffective Assistance Claims (Claims 1d, 1f, 1g)

Lett contends that she was denied effective assistance of counsel during her trial because her attorney failed to: (1) object to the withholding of *Brady* evidence (Claim 1d); (2) was not properly licensed to practice law before or during the time of trial (Claim 1f); and (3) provided incorrect legal advice regarding Texas Penal Code § 12.45 (Claim 1g). The trial court summarily rejected these claims on state habeas corpus review,

finding that Lett failed to show that her attorney was constitutionally ineffective (Dkt. 28-19, at 47).

Claims for ineffective assistance of counsel are analyzed under the well-established standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under the *Strickland* standard, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency. *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable." *Strickland*, 466 U.S. at 687.

"To satisfy the deficient performance prong, 'the defendant must show that counsel's representation fell below an objective standard of reasonableness.'" *Hoffman v. Cain*, 752 F.3d 430, 440 (5th Cir. 2014) (quoting *Strickland*, 466 U.S. at 688). This is a "highly deferential" inquiry; "[t]here is 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id*. (quoting Strickland, 466 U.S. at 689) (internal quotation marks omitted). "To satisfy the prejudice prong, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id*. (quoting *Strickland*, 466 U.S. at 694).

Lett's allegations of ineffective assistance are addressed separately below under the doubly deferential *Strickland* standard that applies on federal habeas review. *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *see also Richter*, 562 U.S. at 105 (emphasizing that the standards created by *Strickland* and § 2254(d) are both "highly

deferential," and "'doubly' so" when applied in tandem) (citations and quotations omitted).

1.    **Failure to Object to *Brady* Violations**

Lett contends that she was denied effective assistance of counsel during her trial because her attorney failed to object to the state's failure to disclose material evidence in the form of autopsy and toxicology reports in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) (Claim 1d) (Dkt. 2, at 1).  In *Brady*, the Supreme Court held that the state violates Due Process when it withholds evidence favorable to the accused where the evidence is material to guilt or to punishment.   *Brady*, 373 U.S. at 87.  For reasons outlined further below, Lett does not demonstrate that a *Brady* violation occurred in this case.  The record further refutes Lett's claim that her counsel failed to pursue discovery or object to any lack of disclosure on the state's part.

The record reflects that the trial court entered a standard "Agreed Discovery Order," which required the state to turn over any "exculpatory and/or mitigating evidence" as well as the final results of any laboratory or other analytical testing pertinent to the evidence in Lett's case (Dkt. 27-2, at 25-26).  Citing delays by the state in complying with this order, defense counsel filed a pretrial "Motion for Discovery Sanctions" in an effort to strike some of the state's expert witnesses who planned to give testimony about scientific testing (Dkt. 27-2, at 33-39).  It is evident from that motion that defense counsel had reviewed the autopsy report and the results of any toxicology testing before the motion was submitted on January 28, 2009 (Dkt. 27-2, at 34-35, 41).  A copy of the autopsy report and the victim's toxicology profile were attached as exhibits to

that motion, confirming that defense counsel had access to its contents before trial, which did not start until August 20, 2009 (Dkt. 27-2, at 43-55). Trial counsel hired a defense expert, Dr. Michael A. Fuller, to testify about the results of the toxicology testing done on the victim, confirming that counsel had access to the toxicology report before trial (Dkt. 27-2, at 106-09; Dkt. 27-11, at 90-107; Dkt. 27-12, at 25-32, 54-63). Likewise, the trial transcript reflects that defense counsel skillfully cross-examined the medical examiner (Dr. Pustilnik) about the results of the autopsy and toxicology testing, both at trial and during a pretrial hearing (Dkt. 27-6, at 53-73; Dkt. 27-10, at 144-55, 157-58).

Lett does not demonstrate that the autopsy or toxicology reports were withheld or that trial counsel had, but failed to make, any valid objection regarding the state's alleged failure to turn over these discovery materials. Absent a showing that her counsel's performance was deficient or that the result of her trial would have been different, but for her counsel's failure to raise an appropriate objection, Lett does not demonstrate that the state habeas corpus court's decision to deny relief on this claim was unreasonable.

## 2. Lack of a Proper License to Practice Law

Lett contends that she was denied effective assistance of counsel during her trial because her attorney was not properly licensed to practice law before or during the time of trial (Claim 1f). In support of this claim at the state court level, Lett presented evidence that her trial attorney had been disciplined by the State Bar of Texas on June 5, 2007, and given a fully probated suspension from June 15, 2007, through June 14, 2008 (Dkt. 28-13, at 18; Dkt. 28-19, at 25). He was disciplined again on February 27, 2009, and given a fully probated suspension from March 1 2009, through September 1, 2010

(*Id*.).    Pointing to this evidence, Lett argues that her defense counsel was not properly licensed to practice law during pretrial preparation of her case or her trial, which took place from August 20 through August 28, 2009.

According to the State Bar of Texas, a fully probated suspension does not preclude an attorney from practicing law.  *See* State Bar of Texas official website – Grievance and Ethics Information, Punishment for Professional Misconduct, located at: https://www.texasbar.com/Content/NavitationMenu/ForThePublic/ProblemswithanAttorney/GrievanceEthicsInfo1/MisconductPunishment.htm (last visited Sept. 12, 2018).  Lett does not demonstrate that her counsel lacked a license to practice law or that the probated suspension interfered with his ability to represent her during any part of her criminal proceeding.  Lett's conclusory allegations do not establish deficient performance or actual prejudice and, as a result, she does not show that the state habeas corpus court erred by denying relief on this claim.

### 3.    Inaccurate Legal Advice

Lett contends that she was denied effective assistance of counsel during her punishment proceeding because her attorney provided inaccurate legal advice regarding Texas Penal Code § 12.45 (Claim 1g).  This claim references advice that Lett received from her defense counsel about stipulating to several drug charges that were pending against her at the time of her trial.  As noted above, Lett stipulated that there were at least four felony drug possession charges pending against her at the time of trial (Dkt. 27-16, at 3-6; Dkt. 27-19, at 18-21).  Pursuant to § 12.45 of the Texas Penal Code, the

prosecutor agreed to dismiss those pending cases in exchange for Lett's stipulation (Dkt. 27-16, at 5-6).

Under § 12.45 of the Texas Penal Code, "[a] person may, with the consent of the attorney for the state, admit during the sentencing hearing his guilt of one or more unadjudicated offenses and request the court to take each into account in determining sentence for the offense or offenses of which he stands adjudged guilty." TEX. PENAL CODE § 12.45(a). If the trial court takes into account an offense admitted pursuant to such a stipulation, subsequent "prosecution is barred for that offense." *Id*. at § 12.45(c).

At the start of the punishment proceeding Lett acknowledged on the record that defense counsel advised her about the effect of stipulating to these offenses under § 12.45 of the Texas Penal Code and the prosecutor confirmed that she would be dismissing those cases in exchange for the stipulation (Dkt. 27-16, at 5-6). In his affidavit to the state habeas corpus court, Lett's trial attorney explained that he made a strategic decision to stipulate to the prior charged offenses because Lett "had no reasonable defense to any of them" (Dkt. 28-19, at 46). He added that the state intended to try Lett for those offenses if she did not stipulate to them pursuant to Texas Penal Code § 12.45 (*Id*.). The record, which confirms that the state intended to try Lett for the pending drug charges and seek a stacked sentence (Dkt. 27-16, at 5), supports defense counsel's affidavit.

Strategic decisions made by counsel during the course of trial are entitled to substantial deference in the hindsight of federal habeas review. *See Strickland*, 466 U.S. at 689 (emphasizing that "[j]udicial scrutiny of counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of

hindsight"). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Lave v. Dretke*, 416 F.3d 372, 380 (5th Cir. 2005) (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)). Lett does not show that defense counsel's advice was incorrect or that his trial strategy was unsound. Lett does not otherwise establish that her counsel's performance was deficient and, therefore, she does not show that the state court's decision to deny relief was an unreasonable application of the *Strickland* standard. Because none of her allegations are sufficient to establish that she was denied effective assistance, Respondent is entitled to summary judgment on these claims (Claims 1d, 1f, 1g).

### C. *Brady* Claims (Claims 3c, 3d, and 3e)

Lett contends that the state violated *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding exculpatory evidence in the form of: the autopsy and toxicology reports (Claim 3c, 3d); and evidence that a witness (Quincy Harris) received a favorable plea deal or reduced sentence in exchange for tainted testimony (Claim 3e). These claims were raised and summarily rejected on state habeas corpus review (Dkt. 28-19, at 12, 47).

As noted above, a *Brady* violation occurs where the state withholds or suppresses evidence favorable evidence that is material to guilt or to punishment. *Brady*, 373 U.S. at 87. To establish a *Brady* violation, a defendant must prove that: (1) the evidence was favorable to the defendant, either because it was exculpatory or because it has impeachment value; (2) the evidence was withheld or suppressed by the prosecutor, either willfully or inadvertently; and (3) the evidence was material such that prejudice

ensued. *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Kyles v. Whitley*, 514 U.S. 419, 432-33 (1995). Evidence qualifies as material under *Brady* "when there is any reasonable likelihood it could have affected the judgment of the jury." *Wearry v. Cain*, 136 S. Ct. 1002, 1006 (2016) (citations and internal quotation marks omitted).

### 1.     Autopsy and Toxicology Reports

As established previously in connection with Lett's ineffective-assistance claim, the record confirms defense counsel had access to the autopsy results and toxicology tests before trial and made use of those reports when cross-examining the medical examiner. (Dkt. 27-10, at 144-55, 157-58). Because this evidence was clearly known to defense counsel, it was not suppressed.[11] *See United States v. Brown*, 650 F.3d 581, 588 (5th Cir. 2011) (Evidence is not suppressed for purposes of establishing a violation of *Brady* "'if the defendant knows or should know of the essential facts that would enable him to take advantage of it.'") (quotation omitted). Because Lett does not demonstrate that the autopsy or toxicology reports were suppressed or withheld by the state, she does not show that the state habeas corpus court erred by denying her claims concerning this evidence.

---

[11] To the extent that Lett also contends that the state suppressed DNA evidence from the Houston DPS Crime Lab (Claim 3b), which claim is unexhausted and procedurally barred for reasons discussed previously, the record reflects that these reports were disclosed and that evidence was presented both at trial and at a pretrial hearing from two scientists who conducted forensic DNA testing of evidence collected in connection with the charges against Lett (Tanya Dean and Valerie Huebner) (Dkt. 27-6, at 12-47; Dkt. 27-11, at 4-28). Lett does not otherwise show that forensic evidence was suppressed by the state for purposes of a claim under *Brady*.

## 2. Evidence of a Witness's Favorable Plea Deal or Reduced Sentence

Lett contends that the state violated *Brady* by withholding impeachment evidence that star witness Quincy Harris received a favorable plea deal or reduced sentence in exchange for tainted testimony (Claim 3e). Lett raised a general claim of this nature during her second state habeas corpus proceeding (Dkt. 28-19, at 12, 16). In his affidavit to the state habeas corpus court, Lett's trial attorney said that he was unable to find any "direct evidence" of a deal between the state and Quincy Harris, but he believed that there was one and used circumstantial evidence of a favorable deal to impeach Harris during the trial (Dkt. 28-19, at 45). The trial transcript confirms that defense counsel questioned Harris about whether he had any deal with the state in exchange for his testimony, which Harris denied (Dkt. 27-10, at 53).

Lett points to evidence, which was referenced by defense counsel on cross-examination at trial, showing that Harris was convicted of a drug offense and sentenced to 180 days in a state jail facility in January of 2009, arguing that this is proof that he received a favorable deal (Dkt. 27-10, at 50-53; 28-15, at 52). There is also evidence that Harris was convicted again on September 24, 2009, and received a sentence of one year in a state jail subsequent to Lett's August 2009 trial (Dkt. 28-15). However, Lett presents no evidence that Harris or any other witness *actually* received a favorable plea deal or reduced sentence in exchange for their testimony. Lett's unsupported allegation that the state suppressed evidence of such a deal is purely speculative and cannot support a *Brady* claim. *See Hughes v. Johnson*, 191 F.3d 607, 629-30 (5th Cir. 1999) (citing *United States v. Pretel*, 939 F.2d 233, 240 (5th Cir. 1991)).

Because Lett does not establish that the state suppressed material evidence that was favorable to the defense, she fails to show that a *Brady* violation. She does not otherwise demonstrate that the state court's decision to deny relief was contrary to or an unreasonable application of *Brady*. Because Lett does not show that she is entitled to relief on any of her Brady claims, Respondent is entitled to summary judgment on these claims (Claims 3c, 3d, and 3e).

### D. Failure to Hold an Evidentiary Hearing (Claim 7)

In her final claim, Lett contends that the state court erred by deciding her habeas corpus application under Article 11.07 without holding an evidentiary hearing. The Fifth Circuit has repeatedly held that "infirmities" or errors that occur during state collateral review proceedings "do not constitute grounds for relief in federal court." *Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999); *see also Morris v. Cain*, 186 F.3d 581, 585 n.6 (5th Cir. 1999); *Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997); *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995) (citations omitted). Instead, a habeas corpus petitioner must demonstrate "constitutional error at the trial or direct review" before a federal court may issue the writ. *Morris*, 186 F.3d at 585 n.6.

Lett has raised many claims in this case and the Court has endeavored to review all of her pleadings. Lett does not demonstrate that any of her underlying claims have merit and she does not allege facts showing that an evidentiary hearing was required to resolve her claims at the state court level. Because most of her allegations are conclusory and not supported by specific details about what further factual development would establish, she does not otherwise show that discovery is warranted or that an evidentiary

hearing is required to decide any of her claims for federal relief. Under these circumstances, Lett's allegations in Claim 7 do not articulate a valid basis for federal habeas corpus review. Because Lett has failed to establish any valid claim for relief in this case, Respondent's Motion for Summary Judgment will be granted and this case will be dismissed.

## V.    CERTIFICATE OF APPEALABILITY

Habeas corpus actions under 28 U.S.C. § 2254 or § 2255 require a certificate of appealability to proceed on appeal. 28 U.S.C. § 2253(c)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner.

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "'that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (internal citation and quotation marks omitted). Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid

claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the pleadings and the applicable law, the Court concludes that reasonable jurists would not find its assessment of the claims debatable or wrong. Because the petitioner does not allege facts showing that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

## VI.  CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

1.      Respondent's Motion for Summary Judgment (Dkt. 26) is **GRANTED**.

2.      Petitioner's  motion for a copy of transcripts (Dkt. 35) is **DENIED**.

3.      The petition for a writ of habeas corpus under 28 U.S.C. § 2254 is **DENIED** and this case is **DISMISSED with prejudice**.

4.      A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Galveston, Texas, this 21st day of September, 2018.

George C. Hanks Jr.
United States District Judge